PAMELA Y. PRICE, ESQ. (SBN 107713)
A Professional Corporation
901 Clay Street
Oakland, CA 94607
(510) 452-0292 – Telephone
(510) 452-5625 – Facsimile
E-Mail: pamela.price@pypesq.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DMC CLOSURE AVERSION COMMITTEE (DCAC), BRAZELL H. CARTER, OTIS E. ROUNDS, HUMAYUN TUFAIL, ELLEN C. MORRISSEY, KAREN BOLDEN, GEORGE "TOMMIE" THOMPSON, CURTIS HUNTER, BETTY J. RODGERS, AND MARIA D. VALLEJO, INDIVIDUALLY AND ON BEHALF OF ALL PERSONS SIMILARLY SITUATED,<br><br>        Plaintiffs,<br><br>      v.<br><br>JOHN GOIA, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS CONTRA COSTA COUNTY SUPERVISOR FOR DISTRICT 1, ERIC ZELL, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS THE PRESIDENT OF WEST CONTRA COSTA HEALTH CARE DISTRICT, WILLIAM WALKER, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS THE HEALTH SERVICES DIRECTOR FOR CONTRA COSTA COUNTY, CANDACE ANDERSON, INDIVIDUALLY AND IN HER OFFICIAL CAPACITY AS CONTRA COSTA COUNTY SUPERVISOR FOR DISTRICT 2, MARY PIEPHO, INDIVIDUALLY AND IN HER OFFICIAL CAPACITY AS CONTRA COSTA COUNTY SUPERVISOR FOR DISTRICT 3, KAREN MICHOFF, INDIVIDUALLY AND IN HER OFFICIAL CAPACITY AS CONTRA COSTA COUNTY SUPERVISOR FOR DISTRICT 4, FEDERAL GLOVER, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS CONTRA COSTA COUNTY SUPERVISOR FOR DISTRICT 5, COUNTY OF CONTRA COSTA, AND THE WEST CONTRA COSTA HEALTH CARE DISTRICT,<br><br>        Defendants. | CASE NO.<br><br>**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF**<br>**JURY TRIAL DEMANDED**<br><br>**CLASS ACTION**<br><br>**1. Medicaid Right to Equal Access to Care (42 U.S.C. § 1396a(a)(30)(A); 42 C.F.R. § 447.2014)**<br>**2. Failure to Provide Medicaid Services with Reasonable Promptness (42 U.S.C. § 1396a(a)(8))**<br>**3. Title II of the American with Disabilities Act (42 U.S.C. §§ 12131-12134)**<br>**4. 1983-Equal Protection**<br>**5. Age Discrimination Act of 1975 (42 U.S.C. § 6101, et seq.)**<br>**6. Title VI of the Civil Rights Act (42 U.S.C. § 2000d, et seq.)**<br>**7. Cal. Civil Code § 51 et seq.**<br>**8. Cal. Gov. Code § 11135**<br>**9. Cal. Health & Safety Code § 1255.1(a)**<br>**10. Cal. Welfare & Institutions Code § 17000** |

COME NOW Plaintiffs DMC CLOSURE AVERSION COMMITTEE (DCAC), BRAZELL H. CARTER, OTIS E. ROUNDS, HUMAYUN TUFAIL, ELLEN C. MORRISSEY, KAREN BOLDEN, GEORGE "TOMMIE" THOMPSON, CURTIS HUNTER, BETTY J. RODGERS, AND MARIA D. VALLEJO, INDIVIDUALLY AND ON BEHALF OF ALL PERSONS SIMILARLY SITUATED, who plead as follows:

## INTRODUCTION

1.      This is an action brought by Plaintiffs DMC CLOSURE AVERSION COMMITTEE (DCAC), BRAZELL H. CARTER, OTIS E. ROUNDS, HUMAYUN TUFAIL, ELLEN C. MORRISSEY, KAREN BOLDEN, GEORGE "TOMMIE" THOMPSON, CURTIS HUNTER, BETTY J. RODGERS, AND MARIA D. VALLEJO, INDIVIDUALLY AND ON BEHALF OF ALL PERSONS SIMILARLY SITUATED,  against Defendants County of Contra Costa (Defendant CCC), West Contra Costa Healthcare District (Defendant WCCHD) and, individually and in their official capacities, JOHN GOIA, ERIC ZELL, WILLIAM WALKER, MARY PIEPHO, KAREN MICHOFF, FEDERAL GLOVER, CANDACE ANDERSEN, seeking a temporary restraining order, declaratory and injunctive relief to enjoin Defendants from carrying out the announced closure of the specialized Segment Elevation Myocardial Infarction (STEMI) cardiac care unit of Doctors Medical Center (DMC), diversion of ambulances from its Emergency Department (ED), and cap of inpatient beds to a maximum of 50 on August 12, 2014.  STEMI care at DMC is an Emergency Department (ED) program for the treatment of heart attack patients designed to ensure prompt intervention when Electrocardiogram (EKG) testing detects poor blood flow, heart muscle damage, abnormal heart rhythms and other heart problems.  Closure of DMC's STEMI unit, diversion of ambulance services, and capping of inpatient services to 50 beds will be catastrophic to residents of West

Contra Costa County (West County), as DMC is one of only two hospitals in the region and the only hospital in the West County with a STEMI program.  According to the "Impact Evaluation Report: Doctors Medical Center San Pablo Potential Closure of Emergency Services"  issued by the Contra Costa Emergency Medical Services Agency on June 13, 2014, and prepared in cooperation with DMC, Kaiser Medical Center Richmond, a copy of which is attached as Exhibit 1, the Hospital Council of the East Bay and American Medical Response, "[d]owngrade or elimination of hospital emergency services will result in increased morbidity consequences for the community."  That same report noted that last year, "DMC received 78 high risk heart attack patients via EMS with another 500 patients who were either self-transported or transferred from other area emergency departments for urgent and/or elective cardiac intervention."    Simply put, the announced reduction in services will result in what is certainly the greatest irreparable harm a court can act to prevent: the loss of lives.

2.       The population DMC's STEMI Unit serves is comprised largely of African Americans, senior citizens, indigent persons, and disabled residents of West County.

3.       Defendants CCC's Emergency Medical Services Division and DMC jointly announced in a press release dated August 1, 2014, a copy of which is attached as Exhibit 2, that DMC's STEMI Cardiac Unit will close, that ambulances will be diverted from its ED and that inpatient admissions will be limited to a maximum of 50, beginning on August 12, 2014, without the 90 days notice required under California law.

4.       DMC is one of only two hospitals in the West County, serving between 40,000 and 45,000 patients a year in its Emergency Department (ED). DMC represents 79 percent of the inpatient capacity in West County and provides 59 percent of ED care in the region.  DMC receives 62 percent of the region's ambulance traffic.

5.      The actions announced in the August 1, 2014 press release will cause patient safety risks and increase in mortality and morbidity of patients served by DMC.  Such impacts mean the difference between life and death.

6.      In furtherance of its duties to all residents of the County, Defendant CCC, through Contra Costa Health Services, operates a full service acute care hospital, Contra Costa County Regional Medical Center (CCCRMC), located in Martinez, California.

7.      DMC serves a community in West County with elevated rates of health problems, notably heart disease, diabetes, cancer, as well as child and adult asthma.  The community served by DMC is largely African American (34.65 percent of 2013 discharges) and people aged 60 or older (61.6 percent of 2013 discharges).  By contrast, African Americans made up only 15.15 percent of discharges at CCRMC, and people aged sixty or older made up only 19.11 percent of hospital discharges at CCRMC in 2013.

8.      Defendant WCCHD's elimination of its STEMI Cardiac Unit, diversion of ambulance services, and cap of 50 patient beds, and Defendant CCC's funding preference for CCRMC over DMC,  are not justified by any healthcare services provision necessity.  Such actions by defendants will cause devastating health consequences to African Americans, senior citizens, indigent persons, and disabled residents of West County.

## JURISDICTION AND VENUE

9.      This class action lawsuit alleges violations of Title VI of the Civil Rights Act of 1964; the Age Discrimination Act of 1975; the Americans with Disabilities Act; 42 U.S.C. §1983; California Civil Code § 51; California Welfare & Institutions Code §17000 et seq.; and California Health & Safety Code §1255.1.   Jurisdiction is conferred on this Court pursuant to 28 U.S.C. §1331, 1343, and 1367.

10.    Plaintiffs' federal claims are authorized by 28 U.S.C. §2201, 2202, Federal Rules of Civil Procedure 57, 65, and the general equitable and legal powers of this Court.

11.    This Court has supplemental jurisdiction under 28 U.S.C. § 1367 for Plaintiff's state law claims arising under California Government Code § 11135 et seq., California Civil Code §§ 51 et seq., and §§ 54 et seq., in that Plaintiffs' federal and state law claims are so related that they form part of the same case or controversy.

12.    Venue is proper under 28 U.S.C. §1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

**PLAINTIFFS**

13.    Plaintiff Betty Rodgers is an African American resident of Richmond, a city within the WCCHD. Rodgers is 58 years old and suffers from congestive heart failure, COPD, asthma, high blood pressure, Stage 3 kidney failure, which chronic health conditions greatly impair her physical activities and require the use of a mobility chair. Rodgers lives within half a mile of DMC and it is the only hospital she is able to access on an emergency basis. As a person of color with chronic, life-threatening health conditions, Rodgers and the members of the class she seeks to represent, is in immediate grave danger because of the Defendants' threatened closure of critical care services.

14.    Plaintiff Curtis Hunter is a 29 year old African-American resident of Richmond, a city within the boundaries of the WCCHD. Hunter lives within 5 miles of DMC. In June 2014, DMC physicians diagnosed Hunter with germ cell cancer and he was hospitalized for two weeks. Hunter's treatment is ongoing and he requires regular, uninterrupted access to critical care services on an emergency basis. If the Defendants' threatened termination of critical services at DMC is not enjoined, Hunter will have to travel to Martinez to receive care. This additional

distance, through Bay Area traffic, would seriously jeopardize Hunter's ability to receive the emergency care he needs to live.

15.   Plaintiff George "Tommie" Thompson is an African American resident of Richmond, a city within the WCCHD.  Thompson is 81 years old and suffers from high blood pressure and diabetes.  Thompson lives less than 5 minutes away from DMC and it is the only hospital he is able to access on an emergency basis. As a person of color with chronic, life-threatening health conditions, Thompson and the members of the class he seeks to represent, is in immediate grave danger because of the Defendants' threatened closure of critical care services.

16.   Plaintiff Maria delos Angeles Vallejo is a Latina resident of Richmond, a city within the WCCHD.  She is a single mother with two children who is completely uninsured.  She suffers from high blood pressure and painful migraine headaches.  Vallejo lives within walking distance of DMC and it is the only hospital she is able to access on an emergency basis.  She does not own a car and does not have any immediate family in the area.  As a person of color with no insurance and chronic, life-threatening health conditions, Vallejo and the members of the class she seeks to represent, is in immediate grave danger because of the Defendants' threatened closure of critical care services.

17.   Plaintiff Humayun Tufail, MD, is a board certified physician specializing in internal medicine. Dr. Tufail cares for patients at DMC as a Hospitalist, focusing on acute care, the admission of patients to the hospital, and the coordination of their care. As such, Dr. Tufail treats many patients suffering from stroke or heart attacks. These patients must receive prompt, aggressive medical interventions in order to have a chance at survival. If the Defendants' are permitted to carry out their threatened termination of critical care services at DMC, Dr. Tufail's

patients, who are predominately people of color, elderly, and/or persons with disabilities, will likely die.

18.     Plaintiff Ellen Morrissey, MD, is a board-certified nephrologist whose practice focuses on patients served by DMC. Dr. Morrissey was previously the Chief of Staff for DMC and is therefore familiar with the operation of the hospital and its patient population. Dr. Morrissey's patients suffer from numerous chronic and life-threatening health conditions, including kidney failure, diabetes, and leg amputations. Most of Dr. Morrissey's patients have already lost most kidney function and consequently suffer from multiple organ problems. If not enjoined by this Court, the Defendants' threatened terminations of critical care services will place Dr. Morrissey's patients at grave risk for death or further permanent disability.

19.     Plaintiff Brazell H. Carter, MD, is a board-certified doctor of internal medicine whose practice focuses on geriatric patients served by DMC. Dr. Carter has been practicing internal medicine in West County and affiliated with DMC for thirty-five (35) years and is therefore familiar with the skilled nursing facilities in the area which account for more than 1,500 beds, occupied primarily by seniors or disabled persons.  Dr. Carter's patients suffer from numerous chronic and life-threatening health conditions, including heart failure, diabetes, and strokes.  If not enjoined by this Court, the Defendants' threatened terminations of critical care services will place Dr. Carter's patients at grave risk for death or permanent disability.

20.     Plaintiff Otis E. Rounds, MD, is a board-certified internist whose practice focuses on patients admitted to DMC.  Dr. Rounds has been affiliated with DMC since February 24, 1982  and is therefore familiar with the operation of the hospital and its patient population.  Dr. Rounds' patients suffer from numerous chronic and life-threatening health conditions, including acute MI and strokes.  If not enjoined by this Court, the Defendants' threatened terminations of

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

critical care services will place Dr. Rounds' patients at grave risk for death or further permanent disability.

21.    Plaintiff Karen Bolden, RN, is a Registered Nurse licensed in California who lives in Pinole, a community within the WCCHD, and who has provided nursing services to the patients of DMC for the past 37 years. Bolden is an African-American breast cancer survivor who received all of her treatment at DMC. As a Registered Nurse Case Manager, Bolden is responsible for coordinating healthcare services for DMC's patients, who are predominately people of color, the elderly, the working poor, and/or persons with disabilities. Bolden knows that the Defendants' threatened termination of critical care services will pose durable and insurmountable obstacles to her patients and will likely lead to their death or to grave health consequences.

## DEFENDANTS

22.    Defendant JOHN GOIA is a Supervisor of the County of Contra Costa Board of Supervisors, representing District 1.  He is sued herein in his individual and official capacity.  At all times relevant herein, he acted under color of law.

23.    Defendant ERIC ZELL is the President of the West Contra Costa Healthcare District.  He is sued herein in his individual and official capacity.  At all times relevant herein, he acted under color of law.

24.    Defendant WILLIAM WALKER is the Health Services Director for Contra Costa County.  He is sued herein in his individual and official capacity.  At all times relevant herein, he acted under color of law.

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

25.    Defendant CANDACE ANDERSON is a Supervisor of the County of Contra Costa Board of Supervisors, representing District 2.   She is sued herein in her individual and official capacity.  At all times relevant herein, she acted under color of law.

26.    Defendant MARY PIEPHO is a Supervisor of the County of Contra Costa Board of Supervisors, representing District 3.  She is sued herein in her individual and official capacity. At all times relevant herein, she acted under color of law.

27.    Defendant KAREN MICHOFF is a Supervisor of the County of Contra Costa Board of Supervisors, representing District 4.  She is sued herein in her individual and official capacity.  At all times relevant herein, she acted under color of law.

28.    Defendant FEDERAL GLOVER is a Supervisor of the County of Contra Costa Board of Supervisors, representing District 5.  He is sued herein in his individual and official capacity.  At all times relevant herein, he acted under color of law.

29.    Defendant COUNTY OF CONTRA COSTA is, and was at all material times, a political subdivision of the State of California.

30.    Defendant WCCHD is a health care district created pursuant to Cal. Health & Safety Code §32000 et seq. It is a political subdivision of the State of California that was formed in 1948 by the residents of West Contra Costa County for purposes building and operating the hospital  now known as Doctors Medical Center (DMC), located at 2000 Vale Road in San Pablo.  Effective February 6, 2007, CCC and WCCHD entered into a Joint Powers Agreement Establishing Doctors Medical Center Authority (the "JPA"), which created the DMC Management Authority (the "Authority"), a joint exercise of powers authority under Government Code Section 6500, et seq., to provide for the oversight of DMC. Effective April 29, 2011, WCCHD established a "Governing Body"  and conferred upon it the authority, among other

things, to approve DMC budgets, determine the types of medical services provided by DMC, and make decisions regarding medical staffing. Thereafter, WCCHD determined that the creation of the Governing Body rendered the existence of the Authority unnecessary and CCC the WCCHD agreed effective April 2011 to terminate the JPA and the Authority. Since then, the Governing Body has continued to exercise its authority to determine the services that will be provided at DMC. A copy of the Agreement terminating the DMC Management Authority and providing for continued participation in the operation of DMC by County Representatives is attached as Exhibit 3. The Governing Body is composed of an 11-member Board of Directors consisting of the five members of the WCCHD Board of Directors elected by voters residing within the Hospital District, along with County Supervisor John Gioia, William Walker, M.D., the Director and Health Officer of the County's health system known as Contra Costa Health Services, Partick Godley, Chief Operating Officer & Chief Financial Officer of Contra Costa Health Services, Wendel Brunner, M.D., Director of Public Health with Contra Costa Health Services, each of whom is a named defendant herein, and two physicians who practice at DMC, Sharon Drager, M.D., a plaintiff herein, and Richard Stern, M.D. At all times relevant to this action, CCC, through its obligations and authority under the agreement establishing the Governing Body of the WCCHD, and in consideration of its public health obligations generally and its financial ability, has had and continues to have an obligation to ensure continuing viability and operations of DMC for the benefit of the residents of West Contra Costa County whose lives will be in peril as a result of the announced reduction in services.

## CLASS ALLEGATIONS

31.     Plaintiffs DMC CLOSURE AVERSION COMMITTEE (DCAC), BRAZILE H. CARTER, OTIS E. ROUNDS, HUMAYUN TUFAIL, ELLEN C. MORRISSEY, KAREN

BOLDEN, GEORGE "TOMMIE" THOMPSON, CURTIS HUNTER, BETTY J. RODGERS, AND MARIA D. VALLEJO bring this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of a class of all African Americans, senior citizens, persons with disabilities and indigent individuals who are current and potential patients of DMC.

32.    The members of the class are sufficiently numerous that joinder of all members is impracticable.  DMC had 35,452 Emergency Department Encounters and 5,417 Inpatient Discharges in 2013.  Because African Americans and senior citizens alone make up a majority of the population served by DMC, many of whom are disabled and indigent, plaintiffs are informed and believe that the class encompasses tens of thousands of African Americans, senior citizens, persons with disabilities and indigent individuals. If potential patients of DMC are included, the number of members of the class grows even larger.

33.    There are questions of law or fact common to the class and these questions predominate over any questions affecting only individual members.   Such questions include: 1) whether Defendants'  closure of DMC's STEMI unit, diversion of ambulance services, and capping of inpatient services to 50 beds will have a disparate impact on the class; 2) whether any disparate impact is justified or whether there is a less discriminatory alternative; 3) whether Defendants have purposely discriminated against the class; 4) whether any such purposeful discrimination is in violation of Title VI of the Civil Rights Act of 1964; 5) whether any such discrimination is in violation of the Age Discrimination Act of 1975; 6) whether Defendants' actions have excluded from participation or denied persons qualified with a disability under the Americans with Disabilities Act with the benefits of a public entity because of such disability; and whether Defendant CCC's actions deprive indigent, incompetent or incapacitated persons of relief and support as a health care provider of last resort.

34.     The claims alleged by Plaintiffs DMC CLOSURE AVERSION COMMITTEE (DCAC), BRAZELL H. CARTER, OTIS E. ROUNDS, HUMAYUN TUFAIL, ELLEN C. MORRISSEY, KAREN BOLDEN, GEORGE "TOMMIE" THOMPSON, CURTIS HUNTER, BETTY J. RODGERS, AND MARIA D. VALLEJO are typical of the claims of the class.

35.     Plaintiffs DMC CLOSURE AVERSION COMMITTEE (DCAC), BRAZELL H. CARTER, OTIS E. ROUNDS, HUMAYUN TUFAIL, ELLEN C. MORRISSEY, KAREN BOLDEN, GEORGE "TOMMIE" THOMPSON, CURTIS HUNTER, BETTY J. RODGERS, and MARIA D. VALLEJO will fairly and adequately represent the interests of the class.

36.     Class certification is appropriate pursuant to Fed. R. Civ. P. 23 (b)(2) because Defendants have acted on grounds generally applicable to the class, making declaratory and injunctive relief appropriate with respect to Plaintiffs DMC CLOSURE AVERSION COMMITTEE (DCAC), BRAZELL H. CARTER, OTIS E. ROUNDS, HUMAYUN TUFAIL, ELLEN C. MORRISSEY, KAREN BOLDEN, GEORGE "TOMMIE" THOMPSON, CURTIS HUNTER, BETTY J. RODGERS, AND MARIA D. VALLEJO and the class as a whole.  The members of the class are entitled to injunctive relief to end Defendants' discriminatory and unlawful conduct.

## FACTUAL ALLEGATIONS

37.     DMC is one of only two hospitals in the region, which is geographically isolated from the rest of Contra Costa County. As stated in Defendant CCC's June 13, 2014 "Impact Evaluation Report: Doctors Medical Center San Pablo Potential Closure of Emergency Services," "[t]he principal traffic corridor through western Contra Costa County is the heavily traveled and frequently congested Interstate 80 extending 16 miles through Contra Costa County.

. . . In 2013, DMC had 171 active staffed beds,"  and "the ED served 41,903 individuals with 29% meeting criteria for severe or critical conditions."

      38.     In an April 1, 2014 memorandum from Patricia Frost, Defendant CCC's Emergency Medical Services Director to Dr. William Walker, Defendant CCC's Health Services Director, confirmed the continuing validity of the variables and assumptions made in a July 2011 "Study of West County Emergency Medical Services, Emergency Department, and Critical Care Access,"  prepared by the Abaris Group.  A copy of the April 2, 2014 memorandum and July 2011 Abaris Study are attached as Exhibit 4 to the Complaint.  Highlighting the key conclusions that continue to be valid, Ms. Frost wrote in the April 1 memorandum to Dr. Walker that: 1) "The loss of [DMC] would be catastrophic to West Contra Costa County; it is one of only two hospitals in the region; 2) [DMC] represents 79 percent of the inpatient capacity in the region; 3) [DMC] provides approximately 60 percent of the ED (Emergency Department) care in the region; 4) [DMC] receives 62 percent of the regional ambulance traffic; 5) The remaining West County hospital would be inundated by this patient volume shift as [DMC] patients would need to go somewhere; 6) The remaining hospital is part of Kaiser and the general public typically perceives it as unavailable to non-Kaiser members; 7) The region already does not have enough needed ED treatment stations or ICU beds even with [DMC]; 8) West County ED waiting times will likely reach 10-12 hours; 9) Additional ambulance hours needed to maintain current EMS performance would cost $2.5M annually 10) Critical infrastructure would be eliminated to support a disaster. Remember Doctors'  key role in the Chevron Fire response serving thousands of patients in that event."  The diversion of ambulance service from DMC will cause much longer patient transports (15-27 minutes longer cross county and multi-county).

39.     DMC is the only hospital in the West County with a STEMI (ST-Elevated Myocardial Infarction) Center.  Again, according to Defendant CCC's Emergency Medical Services Director, in her April 1, 2014 memorandum to Defendant CCC's Health Services Director, "[DMC] provides 25 percent of the STEMI care in the county. Patient outcomes would be threatened and longer lengths of stay expected due to the resulting delays in arranging for intra-facility transfer or transporting patients to more distant STEMI centers.  This critical asset would be a substantial loss to the healthcare system."  Defendant CCC's June 13, 2014 "Impact Evaluation Report" (Exhibit 1) adds that "DMC is a designated primary stroke center serving 50% of West County stroke patients,"  and "[i]n the event of a closure the closest STEMI receiving center is 15-27 minutes away by ground.  These longer transport times do not account for traffic which can add another 20 to 30 minutes of delay to definitive care during peak commute hours."

40.     Patients with circulatory system diagnoses represented 25.14 percent of DMC's inpatient discharges in 2013 based on data from the Office of Statewide Planning and Development.

41.     DMC is owned and operated by Defendant WCCHD.  Defendant CCC operates a comprehensive health system that provides integrated health services to residents of Contra Costa County, in the West County through Defendant WCCHD, in furtherance of its duty under Cal. Welf. & Inst. Code §17000 to relieve and support incompetent, poor and indigent residents of Contra Costa County who are incapacitated by age, disease, or accident and lack of insurance or other health care resources.  Cognizant of this duty to West County residents, Defendant CCC created a "Joint Powers Authority"  on February 6, 2007, to provide management oversight of DMC for the benefit of the communities that both Contra Costa County and the West Contra

Costa Healthcare District serve, in order to facilitate Contra Costa County's statutory obligation under California Welfare & Institutions Code Section 17000.   The Joint Powers Authority terminated by agreement of Defendants CCC and WCCHD in 2011. Defendant CCC also provides medical services to Medi-Cal recipients. Pursuant to its legal obligations to the State of California and to the Centers for Medicare and Medicaid Services (CMS), the federal health care funding agency, the County is responsible for ensuring that its health system serving Medi-Cal recipients complies with requirements of Section 504 and Title II of the ADA as well as with state laws that bar discrimination on the basis of disability.

42.     Despite Defendant CCC's acknowledged responsibility for DMC's continued viability in ensuring the provision of healthcare services throughout Contra Costa County, it has refused to provide funding or take other appropriate measures to prevent the closure of DMC's STEMI Cardiac Unit of Doctors Medical Center, diversion of ambulances from DMC's ED, and imposition of a cap on DMC's inpatient beds to a maximum of 50 on August 12, 2014.

43.     The community served by DMC is largely African American.  Based on data from the Office of Statewide Planning & Development, in 2013 African Americans accounted for 34.65 percent of Hospital Inpatient Discharges and 36.66 percent of Emergency Department Encounters at DMC.  By contrast 52.45 percent of CCRMC Inpatient Discharges in 2013 were White and only 15.15 percent were Black. Whites also comprised 40.77 percent of Emergency Department Encounters at CCRMC in 2013, while African Americans accounted for only 16.08 percent.  Similarly, the community served by DMC is predominantly senior citizens.  Patients aged 60 or older accounted for 61.6 percent of Hospital Inpatient Discharges and 17.47 percent of Emergency Department Encounters at DMC in 2013, while only 19.11 percent of Hospital

Inpatient Discharges and 11.62 percent of Emergency Department Encounters at CCRMC were patients aged 60 or older.

44.     Defendant WCCHD's conduct will have a disproportionate impact on African Americans and senior citizens.  Although Defendant WCCHD is acutely aware of the populations served by DMC and the severely deleterious impacts closure of DMC's STEMI Cardiac Unit of Doctors Medical Center, diversion of ambulances from DMC's ED, and cap of DMC's inpatient beds to a maximum of 50 would have on African Americans and senior citizens in West County, it has announced that such changes to its services will occur on August 12, 2014.

45.     Defendant CCC's conduct will have a disproportionate impact on African Americans and senior citizens.  Although Defendant CCC is aware of the populations served by DMC, and in light of its legal obligation and its ability to ensure DMC's continuing viability based on, among other things, higher than projected property tax revenues in 2013, it has refused to provide funding or take other appropriate measures to prevent the closure of DMC's STEMI Cardiac Unit of Doctors Medical Center, diversion of ambulances from DMC's ED, and a cap of DMC's inpatient beds to a maximum of 50 on August 12, 2014.

46.     Although Defendant WCCHD is acutely aware of the devastating impacts that closure of its STEMI center would have on disabled individuals with chronic heart disease, and the severely deleterious impacts diversion of ambulances from DMC's ED and cap of DMC's inpatient beds to a maximum of 50 would have on a West County population with elevated rates of other disabilities, including diabetes, cancer, as well as child and adult asthma, it has announced that such changes to its services will occur on August 12, 2014.

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

47.     Although Defendant CCC is acutely aware of the devastating impacts that closure of its STEMI center would have on disabled individuals with chronic heart disease, and the severely deleterious impacts diversion of ambulances from DMC's ED and cap of DMC's inpatient beds to a maximum of 50 would have on a West County population with elevated rates of other disabilities, including diabetes, cancer, as well as child and adult asthma, it has refused to provide funding or take other appropriate measures to prevent the closure of  DMC's STEMI Cardiac Unit of Doctors Medical Center, diversion of ambulances from DMC's ED, and a cap of DMC's inpatient beds to a maximum of 50 on August 12, 2014.

## FIRST CAUSE OF ACTION

### (Failure to Provide Medicaid Services with Reasonable Promptness)

48.     The factual allegations of the foregoing paragraphs are incorporated herein by reference.

49.     Under federal Medicaid law, the state and its political subdivisions must ensure that "assistance shall be furnished with reasonable promptness to all eligible individuals."  42 U.S.C. § 1396a(a)(8). This includes the obligation to ensure that access to services is timely based on the nature or severity of the health problem giving rise to the need for rehabilitative and other medical treatment services, including ensuring that Medi-Cal recipients are able to get "emergency medical care whenever needed, 24 hours a day and 7 days a week."  42 C.F.R. § 435.930.

50.     By failing to ensure that the Medi-Cal recipients who now receive and in the future would receive inpatient and outpatient services from DMC, Defendants, by their announced closure of DMC's STEMI Cardiac Unit of Doctors Medical Center,  diversion of

ambulances from DMC's ED, and a cap of DMC's inpatient beds to a maximum of 50 on August 12, 2014, have violated 42 U.S.C. § 1396a(a)(8) and 42 C.F.R. § 435.930.

51.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and Plaintiff Class members will suffer irreparable harm and this harm will continue absent injunctive relief.

WHEREFORE, Plaintiffs pray for relief as set forth herein.

## SECOND CAUSE OF ACTION

### (Violation of Medicaid Right to Equal Access to Care)

52.    The factual allegations of the foregoing paragraphs are incorporated herein by reference.

53.    Pursuant to the Medicaid Act, the state and its political subdivisions must ensure that payments to providers "are consistent with efficiency, economy, and quality of care and are sufficient to enlist enough providers so that services under the [state Medicaid] plan are available to recipients at least to the extent that those services are available to the general population in the geographic area." 42 U.S.C. § 1396a(a)(30)(A); 42 C.F.R. § 447.204.

54.    When Defendants cause the closure of DMC's STEMI Cardiac Unit of Doctors Medical Center, diversion of ambulances from DMC's ED, and a cap of DMC's inpatient beds to a maximum of 50 on August 12, 2014, Medi-Cal patients will not have access to other providers to the same extent as members of the general public with other means of payment, such as private insurance.  On information and belief, the unwillingness of other provider hospitals to provide these services to Medi-Cal recipients is due in large part to the inadequacy of the payments from the Medi-Cal program for the high-acuity patients.

55.     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and Plaintiff Class members will suffer irreparable harm and this harm will continue absent injunctive relief.

WHEREFORE, Plaintiffs pray for relief as set forth herein.

### THIRD CAUSE OF ACTION

### (Americans with Disabilities Act)

56.     The factual allegations of the foregoing paragraphs are incorporated herein by reference.

57.     Title II of the ADA, 42 U.S.C. §§ 12131-12134, bars discrimination on the basis of disability, including on the basis of the nature or severity of the disability, by governmental entities, whether or not they receive federal financial assistance.   The ADA's implementing regulations prohibit practices that deny a qualified individual with a disability access to services they are otherwise qualified to receive.  The ADA's implementing regulations require government services to be provided in the most integrated setting appropriate to a disabled individual's needs. By their announced closure of DMC's STEMI Cardiac Unit of Doctors Medical Center,  diversion of ambulances from DMC's ED, and a cap of DMC's inpatient beds to a maximum of 50 on August 12, 2014, Defendants have purposely targeted for terminated those services which are most needed by persons with disabilities and are therefore in violation of the ADA.

58.     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and Plaintiff Class members will suffer irreparable harm and this harm will continue absent injunctive relief.

WHEREFORE, Plaintiffs pray for relief as set forth herein.

**FOURTH CAUSE OF ACTION**

**(Age Discrimination Act of 1975)**

59.     The factual allegations of the foregoing paragraphs are incorporated herein by reference.

60.     Defendants' announced closure of DMC's STEMI Cardiac Unit of Doctors Medical Center, diversion of ambulances from DMC's ED, and a cap of DMC's inpatient beds to a maximum of 50 on August 12, 2014 deprive Plaintiffs and Plaintiff Class Members of their rights under The Age Discrimination Act of 1975, 42 U.S.C. §6101, *et. seq.* because they have the purpose of discriminating against individuals based on age.  Defendants CCC and WCCCHD receive federal financial assistance.

61.     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and Plaintiff Class members will suffer irreparable harm and this harm will continue absent injunctive relief.

**WHEREFORE**, Plaintiffs pray for relief as set forth herein.

**FIFTH CAUSE OF ACTION**

**(Title VI Purposeful Discrimination)**

62.     The factual allegations of the foregoing paragraphs are incorporated herein by reference.

63.     Defendants' announced closure of DMC's STEMI Cardiac Unit of Doctors Medical Center, diversion of ambulances from DMC's ED, and a cap of DMC's inpatient beds to a maximum of 50 on August 12, 2014 deprive Plaintiffs and Plaintiff Class members of their rights under Title VI of the Civil Rights Act of 1964, 42 U.S.C. §2000d, *et. seq.* because they

have the purpose of discriminating against individuals on the basis of race.  Defendants CCC and WCCCHD receive federal financial assistance.

64.     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and Plaintiff Class members will suffer irreparable harm and this harm will continue absent injunctive relief.

**WHEREFORE**, Plaintiffs pray for relief as set forth herein.

## SIXTH CAUSE OF ACTION

### (42 U.S.C. Section 1983 –Civil Rights – Equal Protection)

65.     The factual allegations of the foregoing paragraphs are incorporated herein by reference.

66.     In doing each and all of the acts alleged herein, the individual Defendants and each of them was acting under color of state law.

67.     Through their conduct herein alleged, Defendants intentionally, wilfully and without justification, engaged in intentional discrimination against Plaintiffs because of their age, disability and race in violation of their Fourteenth Amendment constitutional rights to equal protection and 42 U.S.C. Section 1983.

**WHEREFORE**, Plaintiffs pray for relief as hereinafter set forth.

## SEVENTH CAUSE OF ACTION

### (Violation of Cal. Civil Code §51, et seq.)

68.     The factual allegations of the foregoing paragraphs are incorporated herein by reference.

69.     Through the acts and omissions described herein, Defendants have violated California Civil Code §51(b).  This section provides in pertinent part, "All persons with the

jurisdiction of this state are free and equal, and no matter what their…disability or medical condition are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever."

70. Pursuant to California Civil Code § 51(f ), a violation of the ADA also constitutes a violation of California Civil Code §51 et seq.

71. Defendants' health care delivery system is a "business establishment" within the meaning of California Civil Code §51 et seq.

72. Through the acts and omissions described herein, Defendants have violated California Civil Code §§ 51 et seq. by denying Plaintiffs full and equal access to its services comparable to the access that it offers to the general public.

73. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and Plaintiff Class members will suffer irreparable harm and this harm will continue absent injunctive relief.

**WHEREFORE**, Plaintiffs pray for relief as hereinafter set forth.

### EIGHTH CAUSE OF ACTION

### (Violation of California Welfare & Institutions Code)

74. The factual allegations of the foregoing paragraphs are incorporated herein by reference.

75. Cal. Welf. & Inst. Code 17000 provides that every county and every city and county shall relieve and support all incompetent, poor, indigent persons, and those incapacitated by age, disease, or accident, lawfully resident therein, when such persons are not supported and relieved by their relatives or friends, by their own means, or by state hospitals or other state or private institutions.  By Defendant CCC's announced closure of DMC's STEMI Cardiac Unit of

Doctors Medical Center,  diversion of ambulances from DMC's ED, and a cap of DMC's inpatient beds to a maximum of 50 on August 12, 2014, Defendants CCC and Defendants Goia, Walker, Piepio, Michoff, Glover and Anderson have violated the duties imposed by  Cal. Welf. & Inst. Code 17000.

76.     As a direct and proximate result of Defendants'  unlawful conduct, Plaintiffs and Plaintiff Class members will suffer irreparable harm and this harm will continue absent injunctive relief.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

## NINTH CAUSE OF ACTION

### (Violation of Cal. Gov. Code §11135)

77.     The factual allegations of the foregoing paragraphs are incorporated herein by reference.

78.     Section 11135(a) of the California Government Code says:  "No person in the State of California shall, on the basis of ethnic group identification, religion, age, sex, color, or a physical or mental disability be unlawfully denied full and equal access to the benefits of, or be unlawfully subjected to discrimination under, any program or activity that is conducted, operated or administered by the state or by any state agency, is funded directly by the state, or receives any financial assistance from the state." By their announced closure of DMC's STEMI Cardiac Unit of Doctors Medical Center,  diversion of ambulances from DMC's ED, and a cap of DMC's inpatient beds to a maximum of 50 on August 12, 2014, Defendants have denied  Plaintiffs the benefits of, and are unlawfully subjecting Plaintiffs to, discrimination under Defendants' programs and activities.

79.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and Plaintiff Class members will suffer irreparable harm and this harm will continue absent injunctive relief.

**WHEREFORE**, Plaintiffs pray for relief as hereinafter set forth.

## TENTH CAUSE OF ACTION

### (Violation of Cal. Health & Safety Code §1255.1(a))

80.    California Health & Safety Code Section 1255.1(a) requires that "any hospital that provides emergency medical services under Section 1255 shall, as soon as possible, but not later than 90 days prior to a planned reduction or elimination of the level of emergency medical services, provide notice of the intended change to the state department, the local government entity in charge of the provision of health services, and all health care service plans, or other entities under contract with the hospital to provide services to enrollees of the plan or other entity."

81.    Defendants failed to provide 90 days notice prior to the reduction of STEMI Unit emergency medical services.

82.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and Plaintiff Class members will suffer irreparable harm and this harm will continue absent injunctive relief.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs respectfully request that this Court:

1.    Assert jurisdiction over this action;

2.    Order that Plaintiffs may maintain this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

3.      Declare unlawful Defendants' announced closure of DMC's STEMI Cardiac Unit of Doctors Medical Center, diversion of ambulances from DMC's ED, capping DMC's inpatient beds to a maximum of 50 on August 12, 2014.

4.      Issue a preliminary and permanent injunction prohibiting Defendants from causing the closure of DMC's STEMI Cardiac Unit of Doctors Medical Center, diversion of ambulances from DMC's ED, capping DMC's inpatient beds to a maximum of 50 on August 12, 2014.

5.      Award to Plaintiffs the reasonable costs and expenses incurred in the prosecution of this action, including but not limited to reasonable fees and costs pursuant to 42 U.S.C. §§ 1988, 1920, and Cal Civil Code §54;

6.      Retain jurisdiction over Defendants until such time as the Court is satisfied that Defendants'  unlawful practices, acts and omissions complained of herein no longer exist and will not recur; and

7.      Award such other equitable and further relief as the Court deems just and proper.

Dated:  August 11, 2014                          Respectfully Submitted,

                                                LAW OFFICES OF PAMELA Y. PRICE


                                                 /s/   *Pamela Y. Price*
                                                Pamela Y. Price, Attorney for Plaintiffs

## **JURY TRIAL DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs hereby demand a trial by jury on all issues triable to a jury in each and every cause of action of their Complaint.

Dated:  August 11, 2014August 11, 2014                              LAW OFFICES OF

PAMELA Y. PRICE

_/s/   *Pamela Y. Price*_____

Pamela Y. Price, Attorney for Plaintiffs

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF